# Bradley *v*. Northern Bank of Alabama

*Action on Bill of Exchange, against Indorser.*

1. *Computation of time, on bill payable ninety days after date.*—A bill of exchange, dated the 13th October, and payable ninety days after date, falls due on the 11th January next, and is properly protested on the 14th January.

2. *Seal; what constitutes.*—Although wax is better adapted than any other substance to receive and retain the impression of a seal, and was in ancient times used almost exclusively for that purpose, yet the seal may be stamped or impressed on the paper itself. In this case, "looking at the original protest, seventeen years after it was made, and finding upon it a distinct circular outline impression of a seal, with an indented inner edge, or rim, and within this a number of stars in a circular row, and between them and the edge the legend, "*Notary Public, New Orleans, La.*,—this, with the signatures," the court holds, "is sufficient to establish the authenticity of the protest, in the absence of all evidence to create any suspicion of its genuineness."

3. *Notary's certificate of presentment, demand, non-payment, and notice.*—The statute which makes a notary's certificate "of the presentment for acceptance, or demand of payment, or protest for non-acceptance or non payment, of any instrument governed by the commercial law," etc., "evidence of the facts contained in such certificate" (Rev. Code, § 1089; Code of 1876, § 1336), although improperly placed in the chapter which relates to the appointment, etc., of

[Bradley v. Northern Bank of Alabama.]

notaries public in this State, equally applies to the certificates of foreign nota-
ries, when offered in evidence in the courts of Alabama.

4.  *Presentment.*—The certificate of a notary, stating that he presented the
bill "at the office of the drawees, to Mr. M., a competent clerk, no member of
the firm being therein, and, demanding payment, was answered it could not be
paid," shows a sufficient presentment.

5.  *Foreign laws; proof of, by printed volume.*—A printed volume, whose title-
page is as follows: "Acts passed by the second Legislature of the State of Lou-
isiana, at its second session, held and begun at the town of Baton Rouge, on the
15th day of January, 1855.  Published by authority.  New Orleans:  Printed by
*Amile La Sere,* State Printer,"—shows on its face that it was printed by proper
authority (Code of 1876, § 3045), and is therefore evidence of its contents
without further proof.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. LOUIS WYETH.

This action was brought by the Northern Bank of Alabama,
a corporation chartered under the laws of this State, against
Joseph C. Bradley; was commenced on the 18th August,
1871; and was founded on a bill of exchange for $8,550,
drawn by Jordan & Moore, at Maysville, Alabama, October
13, 1860, on Bradley, Wilson & Co., New Orleans, Louisiana,
payable ninety days after date, to the order of Daniel B.
Turner, and indorsed by said Turner and the defendant.
The complaint contained but one count, which was in the
form given in the Code, "by indorsee against indorser," page
701.  The defendant pleaded—1st, *non assumpsit;* 2d, "that
said bill of exchange was not duly protested;" 3d, "that due
notice of protest was not given to him;" and issue was joined
on these pleas.  On the trial, as the bill of exceptions states,
the plaintiff offered in evidence the bill of exchange on which
the action was founded, "and, in connection therewith,
offered to read to the jury, as evidence, a paper purporting
on its face to be a protest, with a certificate thereon written;
a copy of which, except the seal and signature of the notary,"
is thus set out:

"United States of America, }  By this public instrument of
        State of Louisiana.      }  protest, be it known that, on
the 14th day of January, in the year one thousand and eight
hundred and sixty-one, at the request of Mortimer Belley,
cashier, holder of the original draft, whereof a true copy is
on the reverse hereof written, I, Walter Hicks Peters, a no-
tary public in and for the city and parish of New Orleans,
State of Louisiana aforesaid, duly commissioned and sworn,
presented said draft at the office of the drawees, to Mr. Mc-
Larin, a competent clerk, no member of the firm being
therein, and, demanding payment, was answered that it could
not be paid.  Whereupon, I, the said notary, at the request
of the aforesaid, did protest, and, by these presents, do pub-
licly and solemnly protest, as well against the drawer or

maker of said draft, as against all others whom it doth or
may concern, for all exchange, re-exchange, damages, costs,
charges, and interest, suffered or to be suffered for want of
payment of said draft. This done and protested in the
presence of *Placide Bienvenu* and *Thomas J. Castell,* witnesses.

" *T. J. Castell,*              " WALTER H. PETERS, Not. Pub."
" *P. Bienvenu.*

" A true copy of the original on file in my office. In tes-
timony whereof, I grant these presents, under my signature
and the impress of my seal of office, at the city of New Or-
leans, on the day and year first above written." (Here fol-
lows a copy of the bill of exchange, with the several indorse-
ments thereon.) " I, the undersigned, notary, do hereby
certify, that the parties to the draft, whereof a true copy is
above written, have been duly notified of the protest thereof,
by letters to them by me written and addressed, dated on
the day of the said protest, and served on them respectively
in the manner following to-wit: notices addressed to D. B.
Turner, Joseph C. Bradley, and Theo. Lacy, cashier, respect-
ively, at Huntsville; and to Jordan & Moore at Maysville,
Alabama, and all put in the post-office in this city, on this
day of protest, postage prepaid. In witness whereof, I grant
these presents, under my hand and seal of office, at the city
of New Orleans, on this 14th day of January, A. D. 1861."

"Said original paper," the bill of exceptions recites, " pur-
porting to be a protest, the presiding judge deems it neces-
sary and proper should be inspected in the Supreme Court,
and it is therefore made a part of this bill of exceptions;"
and it was so exhibited to this court. " In connection with
said instrument purporting to be a protest, the plaintiff intro-
troduced a book, entitled as follows : '*Acts passed by the second
Legislature of the State of Louisiana, at its second session, held and
begun at the town of Baton Rouge, on the 15th day of January,
1855. Published by authority. New Orleans: Printed by Amile
La Sere, State printer, 1855;*' and read from an act therein
contained, commencing on page 47, entitled 'An act relating
to bills of exchange and promissory notes,' the 7th and 8th
sections of said act;" which, as copied in the bill of excep-
tions, are in these words :

" SEC. 7. *Be it further enacted, etc.,* That notaries and parish
recorders shall keep a separate book, in which they shall
transcribe and record, by order of date, all the protests by
them made, with mention made of the notices which they
shall have given of the same to the drawers or indorsers
thereof, together with the names of the drawers or indorsers,
the date of the notices, and the manner in which they were
served or forwarded ; which declaration, duly recorded, under

the signature of the notary public or parish recorder, shall be considered and received, in all courts of this State, as a legal proof of the notices.

"SEC. 8. *Be it further enacted,* That all notaries, or persons acting as such, are authorized, in their protests of bills of exchange, promissory notes, or orders for the payment of money, to make mention of the demand made upon the drawer, acceptor, or person on whom such order or bill of exchange is drawn or given, and of the manner and circumstances of such demand, and by certificate, added to such protest, to state the manner in which any notices of protest were served or forwarded ; and whenever they shall have done so, a certificate shall be evidence of all matters therein stated."

"The plaintiff then proved that, from the date of said bill of exchange, to the institution of this suit, the said Joseph C. Bradley had resided at Huntsville, Alabama, and that Huntsville was his post-office. This was all the evidence offered by the plaintiff. Thereupon, the defendant moved to exclude from the jury said sections read from said book, as above copied, because it did not appear that the same purported to be published by authority of the State of Louisiana." (By consent of counsel, entered of record in this court, the book referred to was filed with the clerk, and submitted to the inspection of the judges.) "The defendant moved, also, to exclude from the jury the aforesaid paper purporting to be a protest, because there was no seal of the notary public, who purported to protest said bill, attached to or upon said protest ; and because what appears on said protest as a seal does not show that it is the seal of the notary whose name appears in the face of the protest ; and because the signature attached to said protest is illegible, and cannot be deciphered as the signature of the notary printed in the body of the protest ; and because the statement by the notary, in his certificate, that McLarin was a competent clerk of the drawees, is not, of itself, evidence that said McLarin was the clerk of the drawees ; and because the certificate does not sufficiently show that said bill of exchange was presented for payment at the place of business of the drawees ; and because said certificate does not show that said bill was presented in business hours ; and because said certificate is not, of itself, evidence that the notice was given to the defendant, of the dishonor of the bill, and of its protest for non-payment ; and because said protest is the protest of a foreign bill of exchange, made by a foreign notary, and the certificate therein embodied is not, of itself, such notice to the indorser as would bind him ; and because said protest

shows that said bill was prematurely protested; and because the recitals in said protest are not, of themselves, evidence that McLarin was an authorized agent or clerk of the drawees, to whom said bill could be presented for payment. The court overruled each and all of these objections, and refused to exclude said evidence, or any part thereof, from the jury; to which several rulings, each, the defendant excepted. Thereupon, at the request of the plaintiff, the court charged the jury, that, upon the evidence, they must find a verdict for the plaintiff; to which charge, also, the defendant excepted."

The charge to the jury, and the several rulings of the court on the evidence, as above stated, are now assigned as error.

L. P. WALKER, for the appellant.—1.   The bill of exchange was prematurely protested.   From the 13th October, the day of its date, to the 14th January following, the day on which it was protested, and including that day, there were only ninety-three days.   Three days of grace are to be allowed, exclusive of the day on which the bill falls due, and including the last day of grace.—Edwards on Bills, 486, 489, top; Story on Prom. Notes, §§ 21, 217.   By this rule, the bill should have been protested on the 15th January.

2.   The protest is fatally defective, for want of the notary's official seal.   Although wax was the only material formerly used, to receive and retain the impression of the seal, it is admitted that any other substitute, capable of receiving and retaining the impression, may now be used.   But, whatever material may be used, it must receive and show the impression, so that the identity of the seal may be recognized; for it is the seal which authenticates, and not the substance on which it is impressed, and it is an essential part of the protest.   On a critical examination of this supposed seal, aided by magnifying lenses, the only discernable words are : "Notary Public, lea, La."   This utterly fails to establish the requisites of a notary's seal, either at common law, or under the statute.—5 Cranch, 535 ; 6 Serg. & R. 484; 3 Wendell, 173; 4 Blackf. Ind. 158 ; 13 Howard, 474 ; 19 N. H. 558 ; 32 N. H. 446 ; 5 John. 239 ; 21 Pick. 417 ; 2 Hill, N. Y. 231 ; 49 Ala. 242.

3.   Apart from the defectiveness of the seal, the signature to the protest is illegible, and can not be deciphered and identified as that of Walter Hicks Peters, whose name is printed in the body of the protest.   It is a hieroglyph simply, and requires oral evidence to explain it.—49 Ala. 242, and authorities there cited.

4.   The certificate is not evidence of a notice of protest,

[Bradley v. Northern Bank of Alabama.]

as therein stated. Without the aid of a statute, the giving of notice is no part of the province or duty of a notary, and his certificate, authenticated by his seal, is proof only of the drawee's refusal to accept or pay the bill.—*Bank of Rochester v. Gray,* 2 Hill, N. Y. 231; 6 Whart. Penn. 406, 415; *Kirtland v. Wanzer,* 2 Duer, 278. The Alabama statute (Rev. Code, § 1089) cannot aid the certificate; because, as shown by the whole chapter of which it forms a part, that statute applies only to notaries of the State of Alabama.

5. Even if the statute applies, it cannot supply the defects of this certificate, which states a presentment to McLarin, a "competent clerk." This is not one of the facts which a notary is authorized to certify, and it does not show a sufficient presentment.—*O'Connell v. Walker,* 1 Porter, 263; *Castles v. McMath,* 1 Ala. 356; 18 La. 680; 3 Hill, N. Y. 53; *Stewart v. Allison,* 6 S. & R. 328; 4 How. Miss. 569; 3 McL. C. C. 481; *Hildebran v. Turner,* 5 How. U. S. 69; 4 How. U. S. 262; Story on Bills, § 279.

6. The Louisiana statute was not admissible as evidence, because it does not on its face purport to be published by authority of that State. If admissible, it could have no extra-territorial operation, nor affect the rights or liabilities of the defendant in this suit.

CABANISS & WARD, *contra.*—1. A seal stamped on paper, instead of wax or wafer, is sufficient.—*Pillow v. Roberts,* 13 How. U. S. 472. A slight impression, after the lapse of many years, will be presumed to be the seal.—*Highway v. Pendleton,* 15 Ohio, 735.

2. The notary's certificate shows a presentment at the office of the drawees, and that is sufficient—*Philips v. Poindexter,* 18 Ala. 579; *Br. Bank at Decatur v. Hodges,* 17 Ala. 42; *Stainback v. Bank of Virginia,* 11 Gratt. 260; *Hildebrun v. Turner,* 5 How. U. S. 69; *Wiseman v. Chiapella,* 23 How. 368.

3. The notary's certificate is sufficient evidence of notice, as therein recited.—Rev. Code, § 1089; 1 Brickell's Digest, 267, § 235; *Boggs v. Br. Bank at Mobile,* 10 Ala. 295. There is nothing in the language of the statute, or in its object, to restrict it to notaries holding office under Alabama appointments; and its purpose and intention cannot be thus restricted, and thereby partially defeated, by being misplaced in the Revised Code. Similar statutes exist in nineteen of the States; in ten of which, they are made expressly applicable to foreign notaries, while the others speak of notaries generally. Of these general statutes, in Maine and New Hampshire they are held to include foreign notaries; and in New York only are they held applicable to none but those of

(17)

domestic appointment, as in the case cited from 2 Hill, 227, and 2 Duer, 278. The last case is criticized in 7 Barb. 143, and the ground on which the decision was placed was met and obviated in this case, by the introduction of the Louisiana statute.

MANNING, J.—The calculation by appellant's counsel, of the day when the bill of exchange sued on in this cause became payable, is not correct. The 11th day of January, 1861, and not the 12th, was the term of the period of ninety days after the 13th of October, 1860, the day of the date of the bill; and the third and last day of grace, when the bill should have been paid or protested, was the 14th day of January, the day when the protest was made.

2. No adhesive substance is probably so good as wax, to receive, retain, and distinctly exhibit the figures and legend, or other devices, upon a seal, official or private; and wax was used for that purpose, when an instrument was sufficiently executed for delivery by the seal alone of the party executing it. But, when his signature became as essential, and even more essential than the seal, wafers largely, and perhaps generally, took the place of wax; and now, instead of making an impression of the seal upon any adhesive substance affixed to the paper, upon which the intention or act of the party is declared in writing, the practice has become general to have official seals applied, with a strong pressure, upon the paper itself. And the opinion is expressed, in *Pillow v. Roberts* (13 How. 473), that the impression thus made is "less likely to be destroyed or defaced by vermin, accident, or intention, than that made on wax." This is, doubtless, a principal reason, why the practice of sealing an instrument generally prevails. Counsel for appellant properly admit, that an instrument may be sufficiently sealed by such an impression of the seal upon the paper; but they insist, that it does not appear in this case that the protest objected to was so sealed. With the advantages, above mentioned, of having the impression thus made upon the paper, we must take the disadvantages. Differing with Justice Grier in the case above cited, we think that such an impression is not, generally, so well defined, as it would be on wax, and that, after a long time, it is apt to grow less distinct; especially if the paper be not of a quality good for retaining it. Looking at the original protest, brought here to be inspected in this cause, seventeen years after it was made, we find upon it a distinct circular outline impression of a seal, with an indented inner edge, or rim, and within this a number of stars in a circular row, and between them and

the edge the legend, "*Notary Public, New Orleans, La.*" This, with the signatures, we think sufficient to establish the authenticity of the protest, in the absence of all evidence to create any suspicion of its genuineness. The certificate on the other page of the protest, on the same leaf, is authenticated in the same manner, and the circuit judge did not err in permitting them to come in as evidence.—See a similar ruling, in *Heighway v. Pendleton*, 15 Ohio, 735.

3. In *Boit & McKenzie v. Carr* (in MS), the suit was against the indorser of a promissory note, payable at a bank in Savannah, Georgia; and we held that the protest there made was evidence against defendants, of the presentment for payment, non-payment, and notice thereof to him, by virtue of section 1089 of the Revised Code of 1867. Although, upon the compilation of that Code, the matter of this section was placed in the chapter, and among the sections of the Code of 1852, which related to the appointment, qualification, and duties of notaries public of this State; yet its more appropriate place was the chapter "On Evidence." It is the substance of a statute of 1854; and according to the general and uniform practice, this enactment has been regarded by the bench and bar of this State, as relating to the acts of foreign notaries, as well as to those who held their commission from the governor of Alabama.— See 1st Brick. Dig. 267, § 235. No good reason can be assigned, why it should not be so understood. The certificate of a notary public of Louisiana is, therefore, receivable in our courts, as evidence of the notices he had given of the protest of a bill of exchange, upon which suit is brought here.

4. It is further objected that, in the present instance, the presentment for payment was defective. The protest shows, that the notary presented it at the office of the drawees, "to Mr. McLarin, a competent clerk, no member of the firm being therein; and demanding payment, was answered that it could not be paid." This court held, in *Phillips v. Poindexter* (18 Ala. 580), in an elaborate opinion by PARSONS, J., in the case of a foreign bill of exchange,—a bill drawn in this State, upon drawees in Louisiana,—that the notary's certificate, that the person of whom he made the demand was the attorney in fact of the drawees, was *prima facie* evidence that he was so. See, also, *Stainback v. Bank of Virginia*, 11 Gratt. 260. It was sufficient, however, to show, as is done in this case, that the demand was made at the office of the drawees, and, they not being there, upon a person named by the notary, whom he found in the office.—*Branch Bank v. Hodges*, 17 Ala 42, and authorities there cited.

5. A statute, contained in a book of 500 pages, of what

[Masterson v. Matthews.]

purports to be the "Acts of the Legislature of Louisiana," printed on opposite pages in the English and French languages, was introduced as evidence, against the objections of appellant. Each act is authenticated by signatures, purporting to be those of the speaker of the house of representatives, the president of the senate, and the governor of Louisiana, respectively; and according to the title page, they are acts passed by the "Legislature of the State of Louisiana, at its second session, held and begun in the town of Baton Rouge, on the 15th of January, 1855. Published by authority. New Orleans : printed by Emile La Sere, State Printer, 1855." The objection to its admission was, that it did not appear, on the face of the book, that it was printed by authority of the State of Louisiana. It seems to us that this does (in the language of § 2693, R. C.) appear "upon the face of the book."

We find no error in the record. Let the judgment be affirmed.

BRICKELL, C. J. not sitting, having been of counsel.